IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

WILLIAM B. HARRIS, II,

    Plaintiff,

       v.                      CIVIL NO.: WDQ-14-3395

HOUSING AUTHORITY OF BALTIMORE
CITY, *et al.*

    Defendants.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

William B. Harris sued the Mayor and City Council of Baltimore City (collectively, the "City Defendants") and the Housing Authority of Baltimore City ("HABC") for employment discrimination under federal and state law. Pending are the Housing Authority's motion to dismiss, or in the alternative, summary judgment, the City Defendants' motion to dismiss, Harris's motion to stay for discovery, and Harris's motion for leave to supplement. No hearing is necessary. Local Rule 105.6 (D. Md. 2014). For the following reasons, the Housing Authority's motion, construed as a motion to dismiss, will be granted in part and denied in part. The City Defendants' motion will be granted. Harris's motion to supplement will be granted. Harris's motion to stay and for discovery will be denied as

moot.  The Court will grant Harris leave to amend his claims against the Housing Authority.[1]

I.   Background[2]

On December 22, 2003, Harris[3] "began his employment" with the Housing Authority.  ECF No. 6 (hereinafter, "Am. Compl.") at ¶ 8.  In 2013, Harris held the position of "Chief Mechanic." *Id.* at ¶ 46.

On January 7, 2013, Harris "suffered a work related injury" when he slipped on a ladder at a Housing Authority worksite and struck his right knee.  Am. Compl. at ¶ 9.  On January 8, 2013,

---

[1] "The determination whether to dismiss with or without prejudice under Rule 12(b)(6) is within the discretion of the district court."[1]  "[P]leading is [not] a game of skill in which one misstep by counsel may be decisive to the outcome . . . the purpose of pleading is to facilitate a proper decision on the merits." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) (internal quotation marks omitted).  When a plaintiff's complaint fails to state a claim, he "should generally be given a chance to amend the complaint . . . before the action is dismissed with prejudice."  But, dismissal with prejudice is proper if there is no set of facts the plaintiff could present to support his claim.  *See, e.g., Cozzarelli v. Inspire Pharm., Inc.*, 549 F.3d 618, 630 (4th Cir. 2008).

[2] For the motion to dismiss for failure to state a claim, the well-pled allegations in the complaint are accepted as true. *See Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011). In reviewing the motion to dismiss, the Court may consider allegations in the complaint, matters of public record, and documents attached to the motion to dismiss that are integral to the complaint and authentic.  *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).  Matters of public record include state court records and filings.  *See Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 397 (4th Cir. 2006).

[3] Harris is an African-American male.  Am. Compl. at ¶ 5.

Harris notified his supervisor, Ronald Thorne-El, of his injury. *Id.* at ¶ 11. "His supervisor . . . obtained a requisition via Jenel Warner of Human Resources for [Harris] to be evaluated by [the Housing Authority's] [d]octors at Concentra Operating Corporation ("Concentra")." *Id.* On January 9, 2013, Concentra doctors "diagnosed [Harris] with injuries to his right knee and prescribed medication." *Id.* The doctors ordered that Harris be placed on light duty. *Id.*

On March 14, 2013, "as a result of suffering severe pain and other related issues, [Harris] underwent surgery for a arthroscopy, partial medial meniscectomy, chondroplasty of the patellofemoral joint, and limited synovectomy and injection of Marcaine for a horizontal flap tight tear of medial meniscus and synovitis and chrondral injury to the patellofemoral joint." Am. Compl. at ¶ 12 (internal quotations omitted). On March 27, 2013, Harris returned to work and "was assigned to a position in the office which would accommodate his light duty restrictions." *Id.* at ¶ 13.

On April 22, 2013, Harris "sought treatment for his injuries from his personal physician[,] Dr. Scott Rudick."[4] Am. Compl. at ¶ 14. Dr. Rudick, referred Harris "to several specialist[s] for treatment of his injuries." *Id.* On April

---

[4] Harris "made visits to Dr. Rudick from April 22, 2013 through June 18, 2013." Am. Compl. at ¶ 14.

25, 2013, Dr. Michael A. Franchetti placed Harris on a two week work-related leave "due to the continued problems" with Harris's injury." Am. Compl. at ¶ 15. On June 4, 2012, "Dr. William J. Launder placed Plaintiff on an additional two weeks leave as a result of [Harris]'s injuries." Id. at ¶ 16.

On June 18, 2013, Harris returned to work at HABC on light duty status. Am. Compl. at ¶ 17. On July 2, 2013, however, Dr. McGovern placed Plaintiff on another 30 day leave of absence, "because [Harris's] symptoms continued to cause [Harris] excruciating pain." Id. On August 2, 2013, Harris returned to light duty. Id. at ¶ 18.

On October 18, 2013, Dr. McGovern began giving Harris "Synvisc-One injections for continued pain." Am. Compl. at ¶ 18. "These injections were repeated on October 18th, 25th, and November 1, 2013." Id. "On November 8, 2013, [Harris] returned to Dr. McGovern for [a] follow-up whereby Synvisc-One injections were administered a fifth time to no avail . . . ." Id. at ¶ 19. On November 26, 2013, "Dr. McGovern noted no improvement in [Harris]'s condition." Id. at ¶ 20.

Following the Synvisc-One injections, HABC requested an Independent Medical Evaluation ("IME"). See Am. Compl. at ¶ 21. On December 2, 2013, Harris was examined by Dr. John B. O'Donnell for the IME. Id. Dr. O'Donnell recommended that Harris remain on light duty status, but "based on medical

4

certainty that Plaintiff would be able to return to Chief Mechanic at some point." *Id.* at ¶ 22.   On December 13, 2013, Dr. McGovern, after reviewing the IME, "requested that [Harris] remain on light duty indefinitely." *Id.* at ¶ 23.   "Dr. McGovern discharged [Harris] from his care, citing that [Harris] had reached full medical improvement, which still left [Harris] permanently injured and on light duty." *Id.*

On January 28, 2014, Jenel Warner in the Housing Authority's Human Resources Department contacted Thorne-El and informed him that Harris "needed to provide updated work status in order for him to continue on light duty." Am. Compl. at ¶ 25. On January 28, 2014, "at the request of [] Warner, [Harris] visited Dr. McGovern's office, [and Dr. McGovern] reaffirmed his findings that [Harris] suffered a permanent disability and needed light duty." *Id.*

On February 3, 2014, Warner told Harris that he needed to provide her with a resume of his job qualifications.  Am. Compl. at ¶ 26.  "Warner never specified why and when the resume would need to be provided to her." *Id.*  On February 20, 2014, Harris "received a United States Postal Service (USPS) notice stating that he had a certified letter that needed to be delivered." *Id.* at ¶ 27.   On February 21, 2014, Harris attempted to retrieve the letter, but the USPS office had closed.  *Id.*

On February 25, 2014, Harris received a call from the
union president, Anthony Coates, informing Harris that he
"would be terminated that day if he did not turn over his
resume." Am. Compl. at ¶ 18. Harris and Coates called Warner.
Id. "Coates asked [] Warner if [Harris] 'turned in his resume,
could he keep his job.'" Id. "Warner responded that if
[Harris] turned in his resume that she would talk to him about
his job." Id. When Harris attempted to drop off his resume,
Warner told him that "she didn't want to talk to him about
[his] job because he was to be terminated after 4 p.m. that
day." Id.

On March 20, 2014, Carla Walton, the Housing
Authority's Senior Human Resource Manager, offered Harris the
position of Building Monitor, at $8.96 per hour. Am. Compl. at
¶ 29. Harris's "salary prior to being [] terminated was
$17.68 per hour." Id. Moreover, "Walton stated that the
position was not permanent and likely to be phased out in the
future." Id. Harris alleges that HABC allowed two white
employees, Jay McCullough and James Morris, "to remain on light
status indefinitely." Id. at ¶ 96. Further, Morris and
McCullough "were not required to have continuous doctor visits
to maintain their light duty status, they were not required to
tender a resume[,] nor were their salaries reduced." Id. at ¶
97.

6

Harris filed a timely complaint with the Equal Employment Opportunity Commission ("EEOC") for wrongful termination.  *See* ECF No. 6-2.  On July 30, 2014, the EEOC issued Harris a right to sue letter.  *Id.*

On October 28, 2014, Harris sued HABC and the City Defendants for disability discrimination in violation of the American with Disabilities Act ("ADA")[5] (Count I) and the Rehabilitation Act[6] (Counts II and III), wrongful termination in violation of public policy and Maryland law (Counts IV and V), disability and race discrimination in violation of Maryland law (Count VI), retaliation in violation of Maryland law (Count VII), and race discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII")[7] (Count VIII) and  Section 1981 (Count IX).  ECF No. 1.  On November 18, 2014, Harris filed an amended complaint.  ECF No. 6.

On February 25, 2015, HABC moved to dismiss for failure to state a claim, or in the alternative, summary judgment.  ECF No. 8.  On March 9, 2015, the City Defendants moved to dismiss.  ECF No. 9.  On March 31, 2015, Harris moved to stay the Court's decision on the Housing Authority's motion pursuant to Rule

---

[5] 42 U.S.C. §§ 12-101 *et seq.*

[6] 29 U.S.C. § 794 *et seq.*

[7] 42 U.S.C. §§ 2000e, *et seq.*

56(d).   ECF No. 16.   On March 10, 2015, Harris opposed the City Defendants' motion.   ECF No. 19.   On March 17, 2015, HABC opposed Harris's motion to stay.   ECF No. 20.   On March 27, 2015, the City Defendants filed their reply for their motion to dismiss.   ECF No. 22.   On June 13, 2015, Harris moved to supplement his opposition to the City Defendants' motion.   ECF No. 22.

## II.   Analysis

### A.   Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted.   Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001).   Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003).   These facts must be sufficient to

"state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability;'" the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 557). The complaint must not only allege but also "show" that the plaintiff is entitled to relief. *Id*. at 679 (internal quotation marks omitted). "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not shown--that the pleader is entitled to relief." *Id*. (internal quotation marks and alteration omitted).

B.   The City Defendants' Motion to Dismiss

The City Defendants argue that they are not employers under the federal statutes at issue, and the amended complaint fails to allege any facts against them for any claim. ECF No. 9-1 at 1, 5.[8]

---

[8] The City Defendants also alleged that Harris failed to comply with the Local Government Tort Claims Act ("LGTCA"). ECF No. 9-1 at 6. In his opposition, Harris asserted that he would "file a Motion to Waive Local [Government] Tort Claims Act Notice." ECF No. 19 at 9. On June 13, 2015, however, Harris moved for leave to supplement his opposition. ECF No. 22. To the motion, Harris attached a letter from his prior attorney to the City Solicitor of Baltimore City Law Department which was sent on

"Identification of an 'employer' under [federal employment discrimination statutes] is a question of federal law." *Carver v. Sheriff of LaSalle County*, 243 F.3d 379, 382 (7th Cir.2001) (emphasis omitted) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 754–55, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)). "Recent appellate decisions have clarified that a defendant's qualification as the 'employer' of a [employment discrimination] plaintiff constitutes a substantive 'element of [the] plaintiff's claim for relief, not a jurisdictional issue.'" *Murphy-Taylor v. Hofmann*, 968 F. Supp. 2d 693, 724 (D. Md. 2012) (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 516 (2006); *accord Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 155 (4th Cir.2012) ("[T]he issue of whether the Chapter is an 'employer' under the ADA is non-jurisdictional in nature.").

"[C]ourts have fashioned a variety of tests by which a defendant who does not directly employ the plaintiff may still be the plaintiff's 'employer' under Title VII" and the other employment discrimination statutes. *Gilbert v. Freshbikes, LLC*, 32 F. Supp. 3d 594, 602 (D. Md. 2014); *see also Stephens v. Kay Management Co.*, 907 f. Supp. 169, 172-74 (E.D. Va. 1995) (the definition of "employer" in the federal discrimination statutes

---

July 25, 2014.  ECF No. 22-1 at 3.  The letter provided the City Defendants notice under the LGTCA.  *See id*.  The Court will grant Harris's motion to supplement.

mirror one another).   "Although there are various formulations
of the test for joint employer or integrated employer status,
the formulations all are directed at 'analyzing the amount of
control the alleged joint employer had over employees.'"
*Murphy-Taylor*, 968 F. Supp. 2d at 725 (quoting *Moldenhauer v.
Tazewell–Pekin Consol. Commc'ns Ctr.*, 536 F.3d 640, 644 (7th
Cir. 2008)(emphasis omitted)).

"[T]he precise contours of an employment relationship can
only be established by a careful factual inquiry." *Graves v.
Lowery*, 117 F.3d 723, 729 (3d Cir. 1997).   Therefore, "it is
ordinarily inappropriate for courts to apply [an] employer test
at the motion to dismiss stage." *Tasciyan v. Med. Numerics*, 820
F. Supp. 2d 664, 672 (D. Md. 2011); *see also Murphy-Taylor*, 968
F. Supp. 2d at 728.   A plaintiff must, however, allege
sufficient facts showing that an employment relationship is
plausible.  *See Gilbert*, 32 F. Supp. 3d at 603 ("Plaintiff has
alleged sufficient facts to survive Defendants' motion to
dismiss on the question of whether the four Freshbikes entities
are a 'single employer.'").

In the amended complaint, Harris refers to the City
Defendants only once.  In the "Parties" section, Harris states
that "the Defendant Mayor and City Council of Baltimore City . .
. is a municipal corporation organized under the laws of the
State of Maryland and is located in Baltimore City in the State

of Maryland."  Am. Compl. at ¶ 7.  Throughout the rest of the
complaint, Harris simply refers to "the Defendants," but only
references HABC employees and decisions.  *See e.g.*, *id.* at ¶¶
13, 21.  There are no specific facts alleged against the City
Defendants, and Harris alleges no facts showing that the City
Defendants are in control of HABC's employment decisions to the
extent that they could plausibly be considered a joint employer
of Harris.

Not only is the one sentence statement about the City
Defendants in the "Parties" section insufficient to sustain the
allegation that the City Defendants were Harris's employer, it
is also insufficient to support Harris's other state and federal
allegations.  A complaint must plead fact that "allow[] the
court to draw the reasonable inference that the defendant is
liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S.
662, 678 (2009) (*quoting Twombly*, 550 U.S. at 557).
Accordingly, all claims against the City Defendants must be
dismissed.

C.   HABC's Motion to Dismiss[9]

     1.   ADA and Rehabilitation Act (Counts I, II, III)[10]

To survive a motion to dismiss in an employment discrim-

ination suit, plaintiffs need not allege facts establishing a

*prima facie* case under the burden-shifting framework stated in

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817,

---

[9] "[B]y its very nature, the summary judgment process presupposes
the existence of an adequate record." *Greater Baltimore Ctr.
for Pregnancy Concerns, Inc. v. Mayor & City Council of
Baltimore*, Nos. 11-1111, 11-1185, 2013 WL 3336884, at *9 (4th
Cir. July 3, 2013) ("Discovery is usually essential in a
contested proceeding prior to summary judgment because '[a]
party asserting that a fact ... is genuinely disputed must
support the assertion by,' inter alia, 'citing to particular
parts of materials in the record, including depositions,
documents, electronically stored information, affidavits or
declarations, stipulations . . ., admissions, interrogatory
answers, or other materials.") (quoting Fed. R. Civ. P.
56(c)(1)(A)).  Therefore, generally, "summary judgment is
appropriate only after adequate time for discovery." *Id.*
(reversing a district court's award of summary judgment for the
plaintiff without affording the defendant any discovery).

     Given the many factual disputes in this case and Harris's
Rule 56(d) affidavit, it is inappropriate for the Court to
consider summary judgment on the incomplete record before it.
Accordingly. HABC's motion will be construed as a motion to
dismiss, and Harris's motion to stay pending discovery will be
denied as moot.

[10] Because the ADA and the Rehabilitation Act both prohibit
discrimination against an otherwise qualified individual with a
disability, and "the language of the two statutes is
substantially the same," they are subject to the same analysis.
*Doe v. Univ. of Md. Med. Sys, Corp.*, 50 F.3d 1261, 1264 n.9 (4th
Cir. 1995).  Accordingly, if Harris's allegations fail to state
a claim under the ADA, they also fail under the Rehabilitation
Act.  *See id.* at 1264-66.

36 L.Ed.2d 668 (1973).  *See Swierkiewicz v. Sorema N.A.*, 534
U.S. 506, 510-11, 122 S. Ct. 992, 152 L.Ed.2d 1 (2002);
*McCleary-Evans v. Maryland Dep't of Transp., State Highway
Admin.*, 780 F.3d 582, 585 (4th Cir. 2015).  However, plaintiffs
must plead sufficient facts "to satisfy the elements of a cause
of action created by [the applicable] statute."  *McCleary-Evans*,
780 F.3d at 585.

The ADA makes it unlawful for employers to "discriminate
against a qualified individual on the basis of a disability."
42 U.S.C. § 12112(a).  HABC argues that the amended complaint
fails to state a claim because Harris does not have a disability
within the meaning of the statute and, even if he has properly
pled a disability, Harris cannot fulfill the essential functions
of his job.  *See* ECF No. 8-1 at 11-13.

### a. Disability

A disability under the ADA is either "a physical or mental
impairment that substantially limits one or more major life
activities" (the "actual disability" prong), "a record of such
an impairment" (the "record" prong), or "being regarded as
having such an impairment" (the "regarded as" prong).  42 U.S.C.
§ 12102(1); 29 C.F.R. § 1630.2(g)(1)(iii).

In *Toyota Motor Manufacturing, Kentucky Inc. v. Williams*,
534 U.S. 184, 199, 122 S. Ct. 681, 151 L.Ed.2d 615 (2002), the
Supreme Court adopted a strict construction of disability.  The

14

Court also stated that a temporary impairment did not qualify as a disability under the ADA. *Id.* In September 2008, Congress amended the ADA to overturn the Supreme Court's ruling in *Toyota.* *See Summers v. Altarum Inst., Corp.,* 740 F.3d 325, 329 (4th Cir. 2014). Congress sought to "reinstat[e] a broad scope of protection . . . available under the ADA." ADA Amendments Act ("ADAAA") of 2008, Pub. L. No. 110-325, 122 Stat. 3553. "[T]he [ADAAA] provides that the definition of disability 'shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted . . . .'" *Summers,* 740 F.3d at 329 (*quoting* 42 U.S.C. § 12102(4)(A)). "In enacting the ADAAA, Congress abrogated earlier inconsistent caselaw." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 572 (4th Cir. 2015).

Following passage of the ADAAA, the EEOC revised its regulations to reflect the amendments. EEOC regulations state that "[t]he primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether the individual meets the definition of disability." *Id.* (*quoting* 29 C.F.R. § 1630.1(c)(4).

"An impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in

15

the general population." *Id.* § 1630.2(j)(1)(ii).   However, the
impairment "need not prevent, or significantly or severely
restrict, the individual from performing a major life activity"
to be "substantially limiting."  *Id.*   "The term 'substantially
limits' shall be construed broadly in favor of expansive
coverage" and is "not meant to be a demanding standard."   29
C.F.R. § 1630.2(j)(1)(i).

The amended complaint details Harris's knee surgery, the
constant and continuous pain he suffered after the surgery
necessitating leaves of absence from HABC, and that he needed to
be assigned to light duty.  Am. Compl. at ¶¶ 12-18, 23, 25.
Harris alleges that his injury, and the constant pain resulting
from it, substantially limited him from "traveling, taking care
of personal needs, cleaning his home, shopping, taking out trash
and sleeping." Am. Compl. at ¶ 33.  Although the facts may
ultimately show that Harris's injury was not substantially
limiting, Harris has plausibly alleged disability.  *See Mary's
House, Inc. v. N. Carolina*, 976 F. Supp. 2d 691, 702 (M.D.N.C.
2013)("Although the facts alleged may be 'meager,' a complaint
survives a motion to dismiss as long as it specifically refers
to the underlying facts of the disability or perceived
disability").[11]

---

[11] *See also Johnson v. Balt. Cty. Police Dep't*, No. ELH-12-2519,
2014 WL 1281602 at *15 (D. Md. Mar. 27, 2014) (woman who

b. Qualified Individual

HABC also argues that Harris is not a "qualified individual" under the ADA and Rehabilitation Act because he cannot fulfill the essential functions of his position.   ECF No. 8-1 at 11.

"The ADA prohibits discrimination by a covered entity, including a private employer . . . 'against a qualified individual with a disability.'"   *Pollard v. High's of Balt.*, 281 F.3d 462, 467 (4th Cir. 2002).   A "qualified individual" is an "individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."   42 U.S.C. § 12111(8).

"[A] complaint asserting discrimination under the ADA must provide some allegation or allegations specifically indicating that the plaintiff is qualified to perform the essential

---

suffered from back problems, had a hysterectomy, and had alleged substantial limitations in lifting and reaching stated a disability under the ADA); *Herbig v. Martin*, No. PWG-12-3398, 2013 WL 3146937, at *7 (D. Md. June 18, 2013)(allegations that plaintiff suffered from depression and anxiety and had been ordered by her physician to reduce her work hours by two hours each day stated a disability under the ADA).   *Cf. Gray v. Walmart Stores, Inc.*, No. 7:10-CV-171-BR, 2011 WL 1831780, at *9-*10 & n.10 (E.D.N.C. May 12, 2011)(allegations that plaintiff needed dental care, and assertions (in response to a motion to dismiss) that plaintiff had hypertension, a back injury "that had . . . been in remission for the past seven years," a history of bowel problems, and recurring shoulder injury, were insufficient to state a disability when court had been unable to infer whether the impairments substantially limited a major life activity and she had been able to work).

functions of the job with or without reasonable accommodation."
*E.E.O.C. v. Supervalu, Inc.*, 674 F. Supp. 2d 1007, 1012 (N.D.
Ill. 2009). "Essential functions" are "the fundamental job
duties of the employment position the individual with a
disability holds or desires," but "does not include the marginal
functions of the position." 29 C.F.R. § 1630.2(n)(1). "A job
function may be essential for various reasons, including the
fact that the position exists to perform that function, the
existence of a limited number of employees available among whom
that job function can be distributed, and the fact that the
employee was hired for her expertise in that particular
function." *Blackburn v. Trustees of Guilford Tech. Cmty. Coll.*,
733 F. Supp. 2d 659, 664 (M.D.N.C. 2010). "A plaintiff must
show that he can perform the essential functions of the job at
the time of the employment decision or in the immediate future."
*Lamb v. Qualex, Inc.*, 33 F. App'x. 49, 57 (4th Cir. 2002)
(unpublished).

Other than stating that he was a "Chief Mechanic" for HABC,
Harris does not describe the responsibilities of his position,
its essential functions,[12] or how he could fulfill those
functions with reasonable accommodation at the time of his

---

[12] HABC cites the Chief Mechanic job description and argues that
Harris could not fulfill the physical demands of the position.
The description, however, is outside the complaint and cannot be
considered on a motion to dismiss.

termination.[13]   Absent facts showing that Harris could fulfill the essential functions of his position, Harris has not alleged that he is a qualified individual under the ADA or Rehabilitation Act.  Accordingly, Counts I, II, and III of the amended complaint must be dismissed.

### 2. Wrongful Termination in Violation of Public Policy (Count IV)

Maryland recognizes a cause of action for wrongful termination in a limited number of situations.  *Alder v. Am. Standard Corp.*, 432 A.2d 464, 471 (Md. 1981); *Makovi v. Sherwin-Williams Co.*, 561 A.2d 179, 182-91 (Md. 1989).  "The general theme running through the wrongful discharge . . . decisions . . . is the absence of any other remedy for the employee discharged in contravention of public policy.  The tort was created so that the prospect of a remediless employee would not undercut the policies and goals that other laws sought to further."  *Makovi*, 561 A.2d at 183.  Thus, "Maryland courts have not recognized a judicial exception to the terminable at will doctrine for a violation of clear public policy where a statutory exception already exists to redress violations of that public policy."  *Chekey v. BTR Realty, Inc.*, 575 F. Supp. 715, 717 (D. Md. 1983).

---

[13] In fact, the amended complaint alleges that HABC attempted to accommodate Harris--Harris's doctor recommended that Harris be placed on light duty permanently, and HABC offered Harris a different position which he rejected.

Here, the amended complaint states that Harris's termination "was contrary to clear mandate of public policy, including, Title II of the Americans with Disabilities Act, . . . Section 504 of the Rehabilitation Act of 1973, . . . and the Civil Rights Act of 1866 . . . .preventing discrimination in the work place." Am. Compl. at ¶ 63. There are state and federal statutes which address the employment discrimination alleged-- all of which Harris has asserted in the amended complaint. Accordingly, there is no cause of action for wrongful termination in violation of public policy to the extent that Harris is pleading wrongful termination on the basis of race and disability. *See Makovi*, 561 A.2d at 189-90 ("In cases of discharge motivated by employment discrimination prohibited by Title VII and Art. 49B the statutes create both the right, by way of an exception to the terminable at-will doctrine, and remedies for enforcing that exception. Thus, the generally accepted reason for recognizing the tort, that of vindicating an otherwise civilly unremedied public policy violation, does not apply."

Elsewhere in the amended complaint, Harris alleges that he was terminated because he filed a workers' compensation claim in January 2013. Am . Compl. at ¶¶ 85-86 ("Discharging an employee because that employee filed a workers' compensation claim contravenes a clear mandate of Maryland public policy."). In

his opposition to HABC's motion to dismiss, Harris argues that these allegations were sufficient to sustain the cause of action for wrongful termination in violation of public policy. *See* ECF No. 16 at 9-10.

Courts have recognized that "[d]ischarging an employee solely because that employee filed a worker's compensation claim contravenes the clear mandate of Maryland public policy." *Muench v. Alliant Foodservices, Inc.*, 205 F. Supp. 2d 498, 504 (D. Md. 2002). However, "[t]o sustain a wrongful discharge action under Maryland's workers' compensation statute, an employee must allege that he or she was discharged solely and directly because of filing for benefits under § 39A or that his or her termination violated a recognized rule of law." *Kern v. South Baltimore General Hospital*, 504 A.2d 1154, 1159 (Md. 1986).

The amended complaint alleges that after Harris filed his workers' compensation claim in January 2013, HABC "engaged in a pattern of harassment" which lead to Harris's discharge. Am. Compl. at ¶¶ 86-87. Taking all reasonable inferences for Harris, HABC had sufficient notice that Harris was asserting that his termination was due to a workers' compensation claim in violation of public policy. Accordingly, the Court will not dismiss Count IV to the extent that it argues that he was

terminated for filing a workers' compensation claim.  *See Kern v. S. Balt. Gen. Hosp.*, 504 A.2d 1154, 1158-60 (Md. 1986).

> 3.   Race and Disability Discrimination in Violation of Maryland Law (Counts V and VI)

Modeled on the federal employment discrimination statutes, § 20-606 of Maryland's State Government Article prohibits discrimination in an individual's "compensation, terms, conditions, or privileges of employment" because of "race, color, religion, sex, age, national origin, marital status, sexual orientation, gender identity, genetic information, or disability."[14]  *See Crockett v. SRA Intern.*, 943 F. Supp. 2d 565, 572 (D. Md. 2013).  Section 20-606(f) also prohibits retaliation against an employee who "opposed any practice prohibited by this subtitle" or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subtitle."

In Count V, Harris alleges that HABC violated § 20-606 by having "disciplinary policies and practices, performance review and evaluation policies and practices, work schedules and assignments policies and practices . . . [that] serve[d] to discriminate against a disproportionate number of disabled employees, employees over the age of 40 and/or African American

---

[14] In Count VI, Harris asserts a claim under § 20-601; this section, however, contains only the definitions of the Maryland employment discrimination statute.  Accordingly, the Court will analyze Count VI along with Count V under § 20-606.

employees."  Am. Compl. at ¶ 67.  Harris further alleges that

HABC terminated him in retaliation for his filing of a workers'

compensation claim.  *Id.* at ¶¶ 69-70.

Based on these threadbare and conclusionary allegations,

Count V must be dismissed.  Harris provides no facts about the

alleged discriminatory policies or how these policies had a

disparate impact on a protected class.  Further, filing a

workers' compensation claim is not protected by this subtitle.

*See* § 20-606(f).

In Count VI, Harris alleges that HABC discriminated against

him because of disability.[15]  *See* ECF No. 76-77.  Harris's

disability claim under § 20-606 fails for the same reasons that

his ADA and Rehabilitation Act claims fail--Harris has not

alleged the essential functions of his positions and how he

could fulfill those functions with reasonable accomodation.

Although § 20-606 "does not expressly impose upon employers an

obligation of 'reasonable accommodation' for those individuals

under physical or mental handicap.  The guidelines adopted by

the Commission on Human Relations, however, do impose such an

obligation."  *Md. Com'n on Human Relations v. Mayor & Cty. Of*

---

[15] In Count VI, Harris alleges that he "is a member of a
protected class in that he is African American and has a
disability."  Am. Compl. at ¶ 76.  However, Count VI only
discusses disability discrimination and does not address how
Harris was discriminated against because of on his race.  *See*
Am. Compl. at ¶¶ 76-81.  Accordingly, the Court construes Count
VI solely as a claim for disability discrimination.

*Balt.*, 586 A.2d 37, 40 (Md. Ct. Spec. App. 1991); *see* COMAR 14.03.02.05(B)(1).  "The guidelines were modeled after [the] federal regulations of the Department of Health and Human Services implementing the Federal Rehabilitation Act of 1973 . . . . Accordingly, [Maryland courts] look to cases interpreting the federal statute in interpreting the Maryland Act."  *Id.*; *see also Mass Transit Admin. v. Md. Com'n on Human Relations*, 515 A.2d 781 (Md. Ct. Spec. App. 1986).

> 4.   Retaliation in Violation of Labor and Employment
>       Article § 9-1105 (Count VII)

Maryland Code Annotated, Labor and Employment Article, § 9-1105 creates a criminal penalty for employers who discharge employees for filing workers' compensation claims.  Section 9-1105 does not create a civil remedy.  Accordingly, Count VII will be dismissed.[16]

> 5.   Race Discrimination in Violation of Title VII and
>       § 1981 (Counts VIII and IX)[17]

In *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510, 515 (2002), the Supreme Court held that "an employment

---

[16] Although the Court will grant Harris leave to amend his other claims, Count VII will be dismissed with prejudice because there are no facts the plaintiff could present that would state a civil claim under this statute.  *See Cozzarelli*, 549 F.3d at 630.

[17] *See Gairola v. Virginia Dept. of General Services*, 753 F.2d 1281, 1285 (4th Cir. 1985) (elements of a prima facie case are the same under Title VII and § 1981).

discrimination plaintiff need not plead a prima facie case of discrimination . . . to survive [a] motion to dismiss," because "[t]he prima facie case . . . is an evidentiary standard, not a pleading requirement."  Applying *McDonnell Douglas* to Rule 12(b)(6) motions would establish a "heightened pleading standard" contravening Rule 8(a)(2).  *Id.* at 512.  *Swierkiewicz*, however, was decided before *Iqbal* and *Twombley*.

In *McCleary-Evans v. Md. Dept. of Transp.*, 780 F.3d 582, 583 (4th Cir. 2015), the Fourth Circuit reexamined the pleading standard for discrimination cases in light of *Iqbal* and *Twombly*. McCleary-Evans had applied for two positions in the Maryland Highway Administration's Environmental Compliance Division.  *Id.* "Despite her prior work experience and education, which she alleged made her 'more than qualified' for the two positions, she was not selected for either position. Instead, as the complaint asserted, 'The positions in question were filled by non-Black candidates.'"  *Id.*  McCleary-Evans alleged that she was not hired because her applications were

> subject to a review panel significantly influenced and
> controlled by . . . Gregory Keenan, a White male in
> the Office of Environmental Design ('OED') who worked
> under the supervision of OED Director, Sonal Sangahvi,
> a non-Black woman . . . [and] [d]uring the course of
> her interview, and based upon the history of hires
> within OED, . .. both Keenan and Sangahvi
> predetermined to select for both positions a White
> male or female candidate.

*Id.* She also alleged that, "'although African American candidates had been among the selection pool,' 'Keenan and Sangahvi, for reasons of race and gender, overlooked the African American candidates to select White male, preferably, and White female candidates.'" *Id.* at 583-84. The district court granted the defendant's motion to dismiss the complaint because McCleary-Evans had not "stated facts sufficient to meet the pleading requirements as to the fourth prong" of *McDonnell Douglas.* *Id.* at 584.

On appeal, the Fourth Circuit found that *Swierkiewicz* remained binding precedent, and the "the district court erred in its analysis by requiring [the plaintiff] to plead facts establishing a prima facie case of discrimination to survive a motion to dismiss." *Id.* at 585. However, the Fourth Circuit held that *McCleary-Evans* was properly dismissed under the standards of *Twombly.* The Fourth Circuit reasoned that , although a plaintiff need not plead a *prima facie* case of discrimination, she must still state a claim that "is *plausible* on its face." *McCleary-Evans,* 780 F.3d at 585 (quoting *Iqbal,* 556 U.S. at 678). Therefore, to state a plausible claim of discrimination, a plaintiff is "required to allege facts to satisfy the elements of a cause of action created by that statute." *Id.*

McCleary-Evans failed to allege that "the Highway
Administration 'fail[ed] or refus[ed] to hire' her '*because of*
[her] race . . . [or] sex.'"   *Id*. (alterations in original).

> [S]he alleged that "[d]uring the course of her
> interview, and based upon the history of hires within
> [the Office of Environmental Design], . . . both
> Keenan and Sangahvi predetermined to select for both
> positions a White male or female candidate."  But she
> alleged no factual basis for what happened "during the
> course of her interview" to support the alleged
> conclusion. The allegation that the Highway
> Administration did not hire her because its decision
> makers were biased is simply too conclusory. Only
> speculation can fill the gaps in her complaint—
> speculation as to why two "non-Black candidates" were
> selected to fill the positions instead of her. While
> the allegation that non-Black decisionmakers hired
> non-Black applicants instead of the plaintiff is
> *consistent* with discrimination, it does not alone
> support a *reasonable inference* that the decisionmakers
> were motivated by bias. McCleary-Evans can only
> speculate that the persons hired were not better
> qualified, or did not perform better during their
> interviews, or were not better suited based on
> experience and personality for the positions. In
> short, McCleary-Evans' complaint "stop[ped] short of
> the line between possibility and plausibility of
> entitlement to relief."

*Id*. at 585-86 (quoting *Iqbal*, 556 U.S. at 678-79) (internal
citations omitted).

Here, Harris has done more than make conclusionary
allegations that he was discriminated against because of his
race.  Unlike McCleary-Evans, Harris has cited two specific
employees of a different race who were allegedly treated
differently in similar situations.  *See* Am. Compl. at ¶¶ 96-97.

Although his descriptions of McCullough's and Morris's treatment were not detailed, they are sufficient to survive a motion to dismiss.

III. Conclusion

For the reasons stated above, the City Defendant's motion will be granted.  HABC's motion will be granted in part and denied in part.  Harris's motion to supplement will be granted, and his motion to stay will be denied as moot.

_____8/26/15_____
Date

_____
William D. Quarles, Jr.
United States District Judge